# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**UNITED STATES OF AMERICA**                                    **CRIMINAL ACTION**

**VERSUS**

**DEZIE L. PERKINS**                                    **NO. 10-0022-BAJ-RLB**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein.  Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 3, 2016.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                    CRIMINAL ACTION

VERSUS

DEZIE L. PERKINS                            NO. 10-0022-BAJ-RLB

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the motion of defendant Dezie L. Perkins to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 (R. Doc. 58).

A review of the record reflects that in July, 2010, the defendant entered a plea of guilty to two counts of distribution of a substance containing a detectable quantity of cocaine (Counts I and III) and one count of distribution of five grams or more of a substance containing a detectible quantity of cocaine base, also known as "crack" cocaine (Count II), each a violation of 21 U.S.C. § 841(a)(1).  After the preparation of a Presentence Investigation Report by the United States Probation Office, the defendant was sentenced, on July 11, 2012, to serve 151 months in confinement in connection with the three counts.  The defendant's Judgment was signed on July 25, 2012, and entered on August 8, 2012 (R. Doc. 55).  The defendant did not file an appeal from the convictions or sentence.  Instead, the defendant filed the instant motion to vacate, set aside or correct sentence approximately six months later.  The defendant asserts in this motion that his criminal conviction should be overturned because the Government failed to honor the terms of the defendant's Plea Agreement by failing to withhold or exclude – for sentencing purposes – evidence relative to the defendant's prior drug offenses in determining an appropriate sentencing range under the United States Sentencing Guidelines.  The defendant also asserts that he was

provided with ineffective assistance of counsel in several respects, notably through his attorney's failure to object to the Court's consideration of the defendant's prior offenses in calculating his sentence, failure to advise the defendant about the potential effect of a career offender designation under the Guidelines, and providing misinformation to the defendant that "the sentence would be for 3 years."  Also included in the defendant's motion to vacate was a contention that his attorney failed to file a notice of appeal after having been requested to do so. Based upon this last assertion, the Court determined that, before undertaking a substatnive consideration of the defendant's claims, an evidentiary hearing was necessary to resolve the initial question whether the defendant was deprived of his right to file an appeal.  *See* R. Doc. 69.

The Court thereafter appointed counsel for the defendant and conducted an evidentiary hearing in this matter, limited to the defendant's assertion that he was provided with ineffective assistance of counsel when his attorney failed to file a notice of appeal after having been instructed to do so.  As discussed below, the Court finds that the defendant's assertion in this regard should be rejected and that the defendant's remaining claims should be denied on the merits.

### I. The Evidentiary Hearing And the Defendant's Entitlement To An Appeal

*Review Of The Testimony*

The defendant was sworn and testified that attorney Mark Upton was appointed to represent him in connection with the criminal indictment issued in this case.  The defendant further testified that he agreed to plead guilty to the charges levied against him and that both he and his attorney expected a sentence in the range of approximately three years in confinement. After the entry of the plea and the preparation of a Pre-Sentence Investigation Report, however,

the defendant was sentenced to one hundred fifty-one (151) months, or about 12½ years, in confinement.  According to the defendant, he was upset after the sentencing hearing and spoke with his attorney outside the courtroom about the possibility of pursuing further action.  According to the defendant, Upton was of the opinion that the defendant had been "hammered" by the sentencing judge, and Upton also stated that he had "dropped the ball" in his representation of the defendant.

The defendant's testimony regarding the filing of a notice of appeal was equivocal at best.  He asserted that, in speaking with Upton after the hearing, he asked repeatedly what action they could take next.  According to the defendant, Upton only responded generally that when the defendant arrived at his place of incarceration, the defendant would be able to find other prisoners who could help him with seeking further relief.  Although the parties generally discussed the possibility of further action, including the possibility of an appeal, and although the defendant apparently had a subjective belief that an appeal would be filed on his behalf, the defendant acknowledged that there "wasn't an instruction" given for Upton to do so.  It thus appears that there was no explicit request made by the defendant for a notice of appeal to be filed by Upton's office.  Instead, the defendant testified essentially that he believed that an appeal would be filed simply because Upton "felt remorse" for the severity of the sentence and also for purported errors made in providing representation.  The defendant also believed that Upton had the defendant's best interests at heart.  Thus, the defendant testified that he *"thought"* that Upton would file an appeal because Upton "led me to believe that he felt real bad for me."  (Emphasis added).  This subjective belief, however, was not apparently translated into a clear request or clear instruction for Upton to file an appeal.  Nor did Upton make any representation or provide

any assurance that an appeal would be filed.  Thus, when asked whether Upton had said or done anything to make the defendant believe that a notice of appeal would be filed, the defendant stated:

> Well, no, he didn't say nothing that led me to think that he'll file an appeal because he simply told me he dropped the ball and when I get up there where I'm going, that there'll be guys that can help.

This does not support a finding that Upton promised to file a notice of appeal on the defendant's behalf.

Attorney Mark Upton was next called to the stand and testified that he was the assistant federal public defender for the Middle District of Louisiana in 2011 and 2012 and was appointed to represent the defendant in connection with the defendant's criminal proceedings.  Upton recalled that during the course of that representation, he and the defendant had engaged in discussions about what a likely potential sentence would be if the defendant pleaded guilty, and while Upton did not recall discussing a sentence of three years in confinement, Upton recalled that there were good arguments for a downward variance in the defendant's sentence. Notwithstanding, although Upton argued in favor of a significant downward departure at the defendant's sentencing hearing, the judge sentenced the defendant to 151 months in confinement as noted above.  Upton testified that after the sentencing hearing, he and the defendant stepped outside the courtroom and engaged in a discussion regarding the possibility of further proceedings.  Whereas Upton recalled generally discussing appeals and post-conviction proceedings under § 2255, Upton was clear and unequivocal that the defendant did not explicitly request that an appeal be filed on his behalf.  In addition, it was Upton's belief that there was little likelihood of success in connection with an appeal, specifically because (1) the defendant

had waived his right to appeal in entering into the plea agreement, (2) the sentence was within the range authorized by the Sentencing Guidelines, and (3) the defendant had a significant criminal and drug history. Thus, Upton expressed an opinion that the defendant's best course of action would be to pursue a post-conviction proceeding under § 2255, and Upton advised the defendant that, upon arrival at his place of incarceration, the defendant would be able to find fellow prisoners who were creative and could assist the defendant in that regard.

Finally, Upton testified regarding the procedures that he normally employs when criminal defendants request that an appeal be filed. When such a request is made, Upton puts a note on the file and hands the file to his paralegal with instructions that the paralegal prepare a notice of appeal. The paralegal then prepares the notice of appeal and, upon review and approval, the paralegal files the notice of appeal with the Court. Thus, when a request for an appeal is made by a defendant, a notice of appeal is simply filed as a matter of course. According to Upton, the filing of a notice of appeal is a very routine matter, and his office undertakes such filing on a regular basis. In the instant case, Upton testified that he "was never asked to file an appeal" by the defendant.

*Findings of Fact and Conclusions of Law*

Based on the foregoing, a preponderance of the credible evidence supports a finding that following the sentencing hearing of July 11, 2012, the defendant met with his appointed attorney outside the courtroom, expressed dissatisfaction with the severity of his sentence, and requested information regarding potential avenues of relief. The Court further finds, however, that no clear request or instruction was made by the defendant for Upton to file a notice of appeal on the defendant's behalf. Nor did Upton offer or promise to do so. The Court finds that the

5

defendant's testimony was equivocal at best and contradictory at times regarding whether such a request was made, and the Court finds that Upton's testimony and demeanor were both credible and convincing. The Court finds that after the sentencing hearing, the parties generally discussed the possibility of a direct appeal and the possibility of a post-conviction proceeding under § 2255, and Upton was of the opinion that an appeal had little likelihood of success for the reasons stated above. Although the defendant thereafter had a subjective belief that additional action might be taken on his behalf, there was no assurance or representation made by Upton to that effect. The parties then left it at that, with the extent of Upton's advice being for the defendant to seek the assistance of "jailhouse lawyers" upon arrival at his federal institution and to prepare a post-conviction application under § 2255.

In order to establish a claim of ineffective assistance of counsel, a criminal defendant must ordinarily show (1) that his attorney's conduct fell below an objective standard of reasonableness, and (2) that the deficient conduct prejudiced the defendant's rights. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Both required showings must be made when a defendant asserts, as here, that his attorney provided constitutionally ineffective assistance of counsel by failing to file a notice of appeal. *Roe v. Flores-Ortega*, 528 U.S. 470, 476-77 (2000). *See also United States v. Heckler*, 165 Fed. Appx. 360 (5th Cir. 2006). In such instance, a defendant is deemed to have satisfied the first part of the *Strickland* requirement, *i.e.,* a showing of deficient conduct, if the defendant shows that he timely requested that his attorney file a notice of appeal and his attorney failed to do so. *Roe v. Flores-Ortega, supra*, 528 U.S. at 477 (stating that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable"). Further, with regard to the second

6

requirement, *i.e.* a showing of prejudice, the defendant need not demonstrate that he would have raised one or more meritorious issues on appeal.  *Id.* at 486.  *See also Rodriguez v. United States*, 395 U.S. 327, 330 (1969).  Rather, he must demonstrate only that there is a reasonable probability that, but for the failure of his attorney, he would have filed a timely notice of appeal. *Roe v. Flores-Ortega, supra*, 528 U.S. at 484.  Once a defendant has established that his attorney disregarded an explicit and timely request to file a notice of appeal, prejudice is presumed because, "when counsel's constitutionally deficient performance deprives a defendant of an appeal that he otherwise would have taken, the defendant has made out a successful ineffective assistance of counsel claim entitling him to an appeal." *Id.* at 484.  This is because "filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes." *Id.* at 477.  Courts must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct, and must afford great deference in scrutinizing the attorney actions.  *Id., quoting Strickland v. Washington, supra.*

When there is a question regarding whether a defendant has clearly expressed his wishes regarding an appeal, the preliminary inquiry for the Court is "whether counsel in fact consulted with the defendant about an appeal."  *Roe v. Flores-Ortega, supra*, 528 U.S. at 478.  Pursuant to *Flores-Ortega*, the term "consult" in this context has a specific meaning and includes both "advising the defendant about the advantages and disadvantages of taking an appeal, *and making a reasonable effort to discover the defendant's wishes.*"  *Id.* (emphasis added).  If counsel has consulted with the defendant and obtained clear instructions regarding the filing of an appeal,

then counsel may be seen to act in a "professionally unreasonable manner only by failing to follow the defendant's express instructions." *Id.*

The United States Supreme Court has concluded that an attorney's obligation to consult with a defendant about pursuing an appeal is not absolute; instead, counsel has a constitutionally imposed duty to consult with the defendant when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant has reasonably demonstrated to counsel that he was interested in appealing. *Id.* at 479-80. In determining whether counsel has failed to comply with this duty, a reviewing court must take into account all of the information that counsel knew or should have known at the time. *Id.* Although not determinative, a relevant factor in this inquiry is whether the conviction has followed a trial or is the result of a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because a decision to plead guilty may indicate that the defendant seeks a conclusion to the judicial proceedings. *Id.* In cases where a defendant has pleaded guilty, the Court must consider such factors as whether the defendant has received the sentence that he reasonably anticipated and whether the defendant has reserved or waived some or all of his appellate rights. *Id.*

In the instant case, whereas the parties apparently engaged in consultation regarding general appeal and post-conviction procedures, the defendant did not clearly and unequivocally request that a notice of appeal be filed on his behalf. Thus, the defendant's attorney was not obligated to do so under the totality of the circumstances presented herein. The Court finds that it was not unreasonable for the defendant's attorney to leave it at that, particularly in light of the defendant's entry of a guilty plea and an associated agreement waiving his right to an appeal,

together with the absence of perceived appealable issues.  For these reasons, the Court finds that the defendant's conduct in failing to file a notice of appeal did not fall below an objective standard of reasonableness, and the defendant's contention in this regard should be rejected.

## II. The Defendant's Claims Nos. 1-4, That The Government Breached Its Plea Agreement, Are Without Merit

Turning to a substantive review of the defendant's claims, the law is clear that to obtain collateral relief pursuant to 28 U.S.C. § 2255, a criminal defendant "must clear a significantly higher hurdle" than the standard that would exist on direct appeal.  *United States v. Frady*, 456 U.S. 152, 166 (1982).  When a defendant has been convicted, and his appellate rights have been exhausted or waived, there is a presumption that his conviction is fair and final.  *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998).  "As a result, review of convictions under § 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice."  *Id.*  This procedural bar does not apply, however, to claims that could not have been raised on direct appeal, such as those for ineffective assistance of counsel.  *See Massaro v. United States*, 538 U.S. 500, 504 (2003) (holding that ineffective-assistance claims are properly raised on collateral review and are not procedurally barred by a failure to raise them on direct appeal).  As a general rule, a valid guilty plea waives all non-jurisdictional defects, including any ineffective-assistance-of-counsel claims, unless the ineffective-assistance claims affected the voluntariness of the plea.  *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1993).[1]

---

1. A strong argument may be made that the defendant's claim regarding the Government's alleged breach of his plea agreement is procedurally defaulted because it should have been raised on direct appeal but was not.  *See United States v. DeClassis*, 2005 WL 1074988, *3 (E.D. La. May 3, 2005) (denying consideration of a claim similar to that asserted

As to the defendant's contention that the Government breached its plea agreement with the defendant, the basis for this contention is that, in exchange for the defendant's plea of guilty, the Government agreed "not to file an information seeking increased punishment by reason of one or more prior felony drug convictions." *See* R. Doc. 22 at p. 1. The defendant complains, however, that when the Presentence Investigation Report was prepared, his criminal history and prior drug convictions were considered in arriving at a sentencing range under the United States Sentencing Guidelines. According to the defendant, the Government, by and through the Court, the United States Attorney's Office and the United States Probation Office, should not have considered any prior criminal drug history in determining his sentencing range. As stated in the defendant's application:

> The terms [of the plea agreement] read in their plain language that the United States shall not use enhancements of any prior drug offense to increase punishment for the criminal conduct that was agreed upon within the plea agreement. A plea agreement is a contract

---

herein as "procedurally barred" because not presented in a direct appeal). The United States has not raised this argument, however, and for the completeness of the record, the Court will address the defendant's contention on the merits. *See United States v. Garza*, 2006 WL 981971 (S.D. Tex. April 8, 2006), wherein the Court stated:

> Garza's remaining claims all should have been raised on direct appeal. Because he did not appeal, they were never raised. His failure to raise these grounds on appeal precludes this Court's consideration of the claim as part of his § 2255 motion, unless Garza can demonstrate either "cause and prejudice" or "actual innocence." *Bousely [v. United States*, 523 U.S. 614 (1998); *United States v. Jones*, 172 F.3d 381 (5th Cir. 1999)]. Garza does not contend that he is actually innocent. Instead, he conclusorily claims that his counsel failed to appeal, which, if true, could satisfy the cause and prejudice standard. *United States v. Patten*, 40 F.3d 774 (5th Cir. 1994) (claim that appellate counsel was ineffective for failing to raise a constitutional issue on direct appeal satisfies the cause and prejudice standard). Thus, the Court considers the merits of his remaining claims, as well, rather than dismissing them based on the procedural bar.

*Id. at *4.*

and is binding as to its contents upon all agents of the United States.  This contract should
be enforced accordingly.  It was not.

*See* R. Doc. 58 at p. 4.  The gist of the defendant's argument is that the Government, by agreeing

not to "file an information" seeking enhanced punishment, agreed not to use any information

relating to his prior criminal drug history in determining an appropriate sentencing range under

the Guidelines for the offenses charged against him.

It is well settled that a guilty plea based on a breached plea agreement is subject to

collateral attack under the writ of habeas corpus.  When the prosecution breaches its promise

with respect to an executed plea agreement, the defendant pleads guilty on a false premise, and

hence his conviction cannot stand.  *Santobello v. New York*, 404 U.S. 257, 262 (1971).  The

government must "strictly adhere to the terms and conditions" of a plea agreement.  *United

States v. Valencia*, 985 F.2d 758, 760 (5th Cir. 1983).  Further, "when a guilty plea 'rests in any

significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of

the inducement or consideration, such promise must be fulfilled.'" *Id.* at 761, *quoting Santobello

v. New York, supra*.  If, in the execution of a plea agreement, a defendant is misled by the

Government, the resulting plea agreement may be considered to be involuntarily entered into and

thus induced in violation of due process.  *Montoya v. Johnson*, 226 F.3d 399, 406 (5th Cir. 2000).

However, a court reviewing a habeas application should not "lightly find misrepresentations in a

plea agreement." *Id.  quoting Blackledge v. Allison*, 431 U.S. 63, 71 (1977).  "[T]he defendant's

subjective belief alone is not sufficient to invalidate a guilty plea." *Id., quoting Matthews v.

United States*, 569 F.2d 941, 943 (5th Cir. 1978).  Rather, the defendant must demonstrate that the

plea agreement was "objectively misrepresented to him." *Id.*  Finally, to determine whether the

Government's conduct is consistent with its promises, a court must look to the "defendant's

11

reasonable understanding of the agreement." *United States v. Valencia, supra*, 985 F.2d at 761.

"The law is clear that an unkept plea bargain is a valid basis for the grant of the writ of habeas corpus." *Hayes v. Maggio*, 699 F.2d 198, 203 (5th Cir. 1983), *citing Blackledge v. Allison*, *supra*, 431 U.S. at 76.

The defendant's argument that the Government breached its plea agreement with the defendant is not persuasive.  The defendant's Plea Agreement was signed by both the defendant and his attorney and was read into the record in its entirety at the time of the defendant's re-arraignment.  The Agreement stated that it was entered into knowingly and voluntarily, with the advice of counsel, and with a full understanding of its terms.  *See* R. Doc. 64 at p. 10.  It further stated that no agreement had been made by the Government "as to the actual sentence that will be imposed by the Court as a result [of] this Plea Agreement," and that "no promises or assurances have been made to him as to what the sentence will be."  *Id.*  Finally, the Agreement provided that the Court, "while not bound to apply the Sentencing Guidelines, must consult the guidelines and take them into account when sentencing."  *Id.* at p. 8.  The Court also made clear to the defendant at the re-arraignment hearing the maximum sentences that he faced in connection with the three counts to which he was pleading guilty, specifically terms of up to twenty (20) years in confinement in connection with Counts One and Three, and a term of up to forty (40) years in confinement in connection with Count Two, together with potential fines and with mandatory periods of post-confinement supervision.[2]  *Id.* at pp. 21-22.  The Court then

---

2.  Whereas the defendant was informed that he faced, at the time of his re-arraignment, a mandatory minimum term of five (5) years and a maximum term of forty (40) years in confinement in connection with Count Two of the Indictment, the enactment of the Fair Sentencing Act and its subsequent interpretation as applying to the defendant's offense resulted in the mandatory minimum term not being applicable and in a reduction in the potential

advised the defendant that it was deferring sentencing pending the preparation of a Presentence Report and that the defendant would be contacted by representatives of the Probation Office "who are going to interview you for the purpose of getting the information that they need to prepare that Presentence Report." *Id.* at p. 26.

This Court is unable to accept the defendant's contention that the Government's agreement not to "file an information seeking increased punishment by reason of one or more prior felony drug convictions" amounted to an agreement not to consider the entirety of the defendant's criminal history in arriving at an appropriate sentencing range for the offenses charged. As noted above, a defendant's "subjective belief alone is not sufficient to invalidate a guilty plea" based upon purported misrepresentation in a plea agreement, and a defendant must instead demonstrate that the plea agreement was "objectively misrepresented to him." *Montoya v. Johnson, supra*, 226 F.3d at 406. The Government in this case agreed that it would not undertake the affirmative action of filing a criminal information that would have had the effect of increasing the sentence exposure faced by the defendant beyond that stated above. *See* 21 U.S.C. § 851, which outlines the procedure for subjecting a criminal defendant to certain increased punishments by reason of prior convictions, including that the Government must file an "information" with the Court within a certain period of time prior to trial. An "information" is a formal legal document, similar to an indictment, pursuant to which the Government charges a particular individual with conduct that is punishable by law. The increased punishments to which the defendant would have been subjected by such filing were substantially increased statutory penalties and were not "the mere scoring of prior criminal convictions for purposes of

---

maximum exposure faced by him.

13

determining a defendant's criminal history" under the Sentencing Guidelines.  *See United States v. Garza, supra*, 2006 WL 981971 at \*7.  Specifically, the filing of such an "information" apparently would have subjected the defendant to a mandatory minimum term of imprisonment of ten (10) years and the possibility of a life sentence under 21 U.S.C. § 841(b)(1)(B).[3]  Thus, it is clear that the defendant obtained a substantial benefit by virtue of the Government's agreement not to file an "information" seeking additional punishment, and the Government did not "objectively misrepresent" the nature of its obligation under the defendant's Plea Agreement. The Court further notes that the defendant took no action to file an objection to the calculation of his sentencing range in the Presentence Investigation Report, did not voice any dissatisfaction with the scoring of his criminal history points at his sentencing hearing, and did not file a motion to withdraw his plea at any time.  Thus, the Court finds that the interpretation of the Plea Agreement that the defendant seeks to impose upon the Government constitutes an unreasonable interpretation and, in light of the fact that the Court does not "lightly find misrepresentations in a plea agreement," the Court rejects the defendant's argument in this regard.  *See United States v. Lomas*, 2009 WL 1809907, \*8 (M.D. La. June 23, 2009) (finding no agreement by the Government not to pursue a career criminal designation under the Sentencing Guidelines merely because the Government agreed not to file an information under 21 U.S.C. § 851).  *See also United States v. Brown*, 2006 WL 2547970, \*2 (E.D. La. Sept. 1, 2006) (noting that "the government's agreement with the defendant was that it would not seek a sentence enhancement based on 21 U.S.C. § 851.  The government never agreed as part of the plea agreement to object

---

3.  The defendant's Presentence Investigation Report reflects that he had a prior conviction for aggravated possession of a controlled substance and two prior felony convictions for distribution of a controlled substance.

14

to any further guideline adjustments ....  Any reasonable understanding of the plea agreement would indicate that the government did exactly what it said it would do").

III. The Defendant's Remaining Claims Of
Ineffective Assistance Of Counsel Are Without Merit

As noted above, the defendant alleges grounds of ineffective assistance of counsel other than the failure to file an appeal.  As referenced earlier, a habeas defendant who claims ineffective assistance of counsel must affirmatively demonstrate:

(1)   That his counsel's performance was "deficient", *i.e.*, that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment; and

(2)   That the deficient performance prejudiced his defense, *i.e.*, that counsel"s errors were so serious as to deprive the defendant of a fair trial, a trial in which the result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The defendant must make both showings in order to obtain habeas relief based upon alleged ineffective assistance of counsel.  *Id.*

To satisfy the deficiency prong of the *Strickland* standard, the defendant must demonstrate that his counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards.  *See, e.g., Martin v. McCotter*, 796 F.2d 813, 816 (5th Cir. 1986).  The reviewing court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional competence and that, under the circumstances, the challenged action might be considered sound trial strategy.  *See, e.g., Bridge v. Lynaugh*, 838 F.2d 770, 773 (5th Cir. 1988).  This Court, therefore, must make every effort to eliminate the distorting effects of hindsight and to evaluate the conduct from counsel's perspective at the time of trial.  *Martin v. McCotter, supra*, 796 F.2d at 817.  Great deference is

15

given to counsel's exercise of professional judgment.  *Bridge v. Lynaugh, supra*, 838 F.2d at 773; *Martin v. McCotter, supra*, 796 F.2d at 816.

If the defendant satisfies the first prong of the *Strickland* test, his petition nonetheless must affirmatively demonstrate prejudice resulting from the alleged errors.  *Earvin v. Lynaugh*, 860 F.2d 623, 627 (5th Cir. 1988).  To satisfy the prejudice prong of the *Strickland* test, it is not sufficient for the defendant to show that the alleged errors had some conceivable effect on the outcome of the proceeding.  *Strickland v. Washington, supra*, 466 U.S. at 693.  Rather, the defendant must show a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.  *Martin v. McCotter, supra*, 796 F.2d at 816.  The habeas defendant need not show that his counsel's alleged errors "more likely than not" altered the outcome of the case; he must instead show a probability that the errors are "sufficient to undermine confidence in the outcome."  *Id.* at 816-17.

The above showing is one that the defendant cannot make in the instant case.  In this regard, the defendant contends that his attorney provided ineffective assistance by failing to advocate on his behalf during the sentencing proceedings, notably by failing to seek enforcement of the Plea Agreement by requesting that the defendant's criminal history not be considered in determining his sentencing range under the Guidelines.  In addition, the defendant contends that his attorney failed to adequately explain the effect of the career offender guidelines on his sentencing range and misadvised the defendant that he would receive a three-year sentence in exchange for his guilty plea.

First, with regard to the defendant's contention that his attorney failed to advocate effectively on the defendant's behalf during the sentencing proceedings, it is clear, after

16

construing the defendant's application liberally, that there was no breach of the plea agreement for the reasons previously discussed.  Accordingly, it cannot be interpreted to be ineffective assistance for the defendant's attorney to have failed to advocate relative to this issue.  Further, contrary to the defendant's assertion, the record reflects that the appointed public defender went to great lengths in advocating on the defendant's behalf, filing no fewer than five (5) sentencing memoranda (R. Docs. 35, 36, 42, 49 and 50) and arguing vigorously and convincingly, both in writing and at the sentencing hearing, in favor of a downward departure – to three years of imprisonment – in the sentence imposed.  While these arguments were ultimately unsuccessful, the sentencing judge did impose a sentence at the very bottom of the sentencing range calculated by the Probation Office.  Accordingly, the Court is unable to conclude that there was any deficient conduct in this regard.

Turning to the defendant's contention that his attorney failed to adequately explain or discuss the effect of a potential career offender designation under the Sentencing Guidelines, the Court finds that this argument also lacks merit.  The sentence that the defendant received was well below the statutory maximum for the offenses charged and, as noted above, was at the bottom of the calculated sentencing range under the Guidelines.  The maximum sentences that the defendant faced were stated in the Plea Agreement and were fully explained to the defendant by the Court at his re-arraignment.  As a result of the application of the Fair Sentencing Act, the sentence exposure for Count II of the Indictment was subsequently reduced in advance of the sentencing hearing.  The defendant's guilty plea colloquy reflects that the defendant understood, not only the maximum prison term that he faced by entering a guilty plea as to each of the three Counts, but also that the Court would utilize the Sentencing Guidelines in calculating his

recommended sentencing range and that such range would not be determined until the preparation of a Presentence Investigation Report.  The defendant further understood that his sentencing range, however calculated, was merely advisory and that the judge was not bound to follow the recommendation of the Probation Office.  The record reflects that the defendant's attorney argued strongly, both in brief and at the defendant's sentencing hearing, that the judge should exercise discretion and refrain from finding the defendant to be a career offender under the Guidelines.  In the Court's view, therefore, the defendant's contention relative to an alleged failure to explain the potential effect of a career offender designation hardly suggests that his attorney was ineffective.  To the contrary, the defendant's contention merely indicates that now, after receiving the sentence that he received, he would like a "do-over" in hopes of obtaining a better result.  This contention does not support a claim for relief under § 2255.  *See, e.g., United States v. Martin*, 2011 WL 317738, *3 (E.D. La. Feb. 1, 2011).

Finally, the defendant contends that his attorney affirmatively misrepresented that, in exchange for his guilty plea, the defendant would be sentenced to three years in confinement.  In this regard, as noted above, to be constitutionally valid, a guilty plea must be knowing and voluntary.  *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989).  Thus, a guilty plea may be invalid if induced by defense counsel's unkept promises.  *Id.*  On the other hand, a defendant's "mere understanding" regarding a certain sentence that he might receive is not enough.  *See United States v. Acevedo*, 9 F.3d 103, *2 (5th Cir. 1993), *quoting Harmason v. Smith, supra*.  Further, a defendant ordinarily will not be heard to refute his testimony given at a plea hearing while under oath.  *Blackledge v. Allison*, *supra*, 431 U.S. at 73-74.  Notwithstanding, a defendant may seek habeas relief on the basis of alleged promises, though inconsistent with representations

18

made in open court when entering a guilty plea, by proving (1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise.  *See Harmason v. Smith, supra*, 888 F.2d at 1529.  In the context of a claim of ineffective assistance of counsel, however, a defendant must establish, not only that he would not have pleaded guilty but for counsel's errors but, also, that counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair.  *Lockhart v. Fretwell*, 506 U.S. 364, 370 (1993).  In this Circuit, *Lockhart* has been interpreted as requiring "a rather appreciable showing of prejudice."  *Armstead v. Scott*, 37 F.3d 202, 207 (5th Cir. 1994).

In the instant case, the defendant expressly stated at his re-arraignment colloquy that no assurances had been made to him regarding the sentence that he would receive and that he understood that the sentence would be based upon a calculation made by the Probation Office based upon the Sentencing Guidelines and information provided by him.  He stated on the record that he had conferred with counsel and that he understood all of the rights that he was giving up by pleading guilty.  Further, the defendant's colloquy with the Court expressly contradicts his assertion that he was assured of a particular sentence.  This testimony and the plain terms of the Plea Agreement clearly refute the defendant's allegation that he relied upon any promise made by his attorney that he would only receive a sentence of three years in confinement.  In fact, at the time of his re-arraignment, the defendant was advised by the Court and in the Plea Agreement that Count II of the indictment carried a mandatory minimum sentence of five years in confinement, further belying the defendant's contentions in this regard.  Finally, the defendant has not pointed to any specific conversation between himself and his attorney, much less the time and place thereof or

whether other persons were present, that contradict his testimony given in open court.  Accordingly, the Court rejects the defendant's contention in this regard.

## Certificate Of Appealability

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although the defendant has not yet filed a Notice of Appeal herein, the Court may address whether he would be entitled to a certificate of appealability.  *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).  A certificate of appealability may issue only if a habeas defendant has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  In cases where the Court has rejected a defendant's constitutional claims on substantive grounds, a defendant must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), *quoting Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In the instant case, the Court finds that reasonable jurists would not debate the denial of the defendant's § 2255 application or the correctness of the substantive ruling.  Accordingly, it is appropriate that, in the event that the defendant seeks to pursue an appeal in this case, a certificate of appealability be denied.

## RECOMMENDATION

It is recommended that the defendant's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (R. Doc. 58) be denied.  It is further recommended that, in the

event that the defendant seeks to pursue an appeal in this case, a certificate of appealability be

denied.

Signed in Baton Rouge, Louisiana, on March 3, 2016.


_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**